**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: March 13 2018

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: ) | Case No. 08-36702 | |
| ) | | |
| Michael Ray Morris and ) | Chapter 7 | |
| Cathy Marie Morris, ) | | |
| ) | | |
| Debtors. ) | Judge John. P. Gustafson | |

### MEMORANDUM OF DECISION AND ORDER REGARDING PROPERTY OF THE ESTATE AND ABANDONMENT

This case came before the Court for hearing on February 22, 2017 as to the issue of whether Debtors Michael Ray Morris and Cathy Marie Morris' post-case closure distribution of additional funds from the probate estate of Geraldine Morris is property of the reopened estate. Debtors filed a Brief on Issue of Abandonment [Doc. #58] and Trustee Ericka Parker ("Trustee") filed a Trustee's Brief in Support [Doc. #59].

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O) and venue is proper under 28 U.S.C. § 1409(a). The court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order 2012-7 of the United States District Court for the Northern District of Ohio.

For the reasons that follow, the additional inheritance from the estate of Geraldine Morris is deemed to have been abandoned upon closure of the Debtors' case and thus is not property of

the estate in this reopened case.

## FACTUAL BACKGROUND

The facts of this case are not in dispute and are summarized as follows. On December 9, 2008, Debtors Michael Ray Morris and Cathy Marie Morris filed a Chapter 7 bankruptcy petition. [Doc. #1]. On Line 35 of Schedule B, Debtors listed "distributions from mother's estate" with an unknown value. [*Id.*, p. 13]. Debtors also filed support documents detailing the probate inventory, appraisal, and schedule of assets belonging to the estate of Geraldine Morris, Debtor Michael Ray Morris' mother. [Doc. #4, pp. 8-15].

The Chapter 7 Trustee filed a Final Report in the above captioned case on September 7, 2011 that listed her receipt of Debtor's inheritance from the estate of Geraldine Morris in the amount of $4,757.31. [Doc. #37, p. 3]. On November 30, 2011, Trustee filed a Final Account and Distribution Report ("Final Account") [Doc. #43, p. 6] that also lists Trustee's receipt of "distributions from mother's estate" with a value of $4,757.31. [*Id.*]. The case was closed on December 1, 2011 per the court's Final Decree. [Doc. #45].

On January 17, 2017, the former Chapter 7 Trustee received a phone call from Elizabeth Schuller, attorney for the administrator of the estate of Geraldine Morris, informing her that Debtor Michael Ray Morris was owed an additional inheritance disbursement of $2,112.76. [Doc. #59, p. 1]. According to Ms. Schuller, additional funds became available after the prior probate counsel's fees were ordered disgorged due to his failure to issue a timely final accounting of Geraldine Morris' estate. [*Id.*]. A check for $2,112.76 was received by the former Trustee, who deposited it and subsequently filed a Motion to Reopen Chapter 7 Case on January 20, 2017. [*Id.*; Doc. #46].

After Debtors filed a Response to Trustee's Motion to Reopen [Doc. #48], the court held a hearing on February 22, 2017 during which it granted Trustee's Motion to Reopen and ordered the parties to file briefs on the issue of whether the additional inheritance is an asset of the reopened estate. The Chapter 7 Trustee was reappointed by the Office of the United States Trustee on February 27, 2017. [Doc. #56].

In their Brief on Issue of Abandonment, Debtors contend that the additional inheritance was abandoned under 11 U.S.C. § 554(c) upon closure of the case given that Debtors' scheduled interest in Geraldine Morris' estate was fully administered per the Final Account. [Doc. #58, p. 2]. In response, Trustee argues that, because she could not abandon what did not exist at the time of case closure, § 554(d) applies instead and that the additional inheritance is properly regarded as

2

property of the Debtors' estate. [Doc. #59, p. 2].

Accordingly, the court must decide: 1) whether the Debtors' inheritance interest was subject to abandonment under § 554(c) or, if it remains property of the estate pursuant to § 554(d)'s catch-all for property neither abandoned nor administered; and, 2) if the inheritance is found to have been abandoned under § 554(c), whether revocation of abandonment is warranted.

## LAW AND ANALYSIS

### I. Abandonment of Estate Property under 11 U.S.C. § 554

Section 554 provides that property can be abandoned, or removed from a debtor's estate, in three different ways. Section 554(a) allows the trustee, by his or her own motion and after notice and a hearing, to obtain an order abandoning property that is either burdensome to the estate or of inconsequential value. Similarly, § 554(b) allows a party in interest to request that the court order the trustee, after notice and a hearing, to abandon property for the same reasons described in § 554(a). Given its reliance on the filing of a motion by either the trustee or a party in interest, and notice to all parties in interest, abandonment under § 554(a) and (b) "is commonly referred to as specific or intentional abandonment." *In re DeGroot*, 484 B.R. 311, 318 (6th Cir. BAP 2012).

Because the issue before the court deals with abandonment that took place without a direct act by the trustee or a party in interest, only § 554(c) and (d) are relevant here. Section 554(c) provides:

> Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

Abandonment under this provision is often referred to as "abandonment by operation of law" or "technical abandonment[1]". Although the bankruptcy court may "order otherwise", typically when a bankruptcy case is closed, property of the estate is abandoned under § 554(c) when it has been properly scheduled by the debtor and has not been administered by the trustee. *DeGroot*, 484 B.R. at 319; *see*, *LPP Mortg. Ltd. v. Brinley*, 547 F.3d 643, 648 n. 3 (6th Cir. 2008); *Stark v. Moran (In re Moran)*, 566 F.3d 676, 679 (6th Cir. 2009). Unlike abandonment under § 554(a) and (b), abandonment under § 554(c) takes effect without notice and a hearing, occurring "automatically

---

1/ A Michigan bankruptcy court convincingly argues that referring to abandonment under § 554(c) as "technical abandonment" adds unnecessary judicial gloss not present in the statute itself. *In re Reiman*, 431 B.R. 901, 908 (Bankr. E.D. Mich. 2010)("The statute itself does not describe the abandonment under § 554(c) as technical in any respect, nor is there any logical reason why the term "technical" should be applied to an abandonment under § 554(c)."); *see also*, *In re Wright*, 566 B.R. 457, 461 (6th Cir. BAP 2017)(citing *Reiman*).

3

upon the closing of the case." *DeGroot*, 484 B.R. at 319.

Section 554(d) provides that property that has not been abandoned under § 554(a), (b), or (c), nor administered by the trustee, remains property of the estate. *Id.* Essentially, § 554(d) operates as "a 'fail-safe' provision, ensuring that property the debtor fails to schedule, and which the trustee does not administer, remains within the estate." *Id.* Notably, both § 554(c) and (d) begin with the phrase "[u]nless the court orders otherwise," indicating that courts are afforded discretion when it comes to: 1) giving effect to or revoking a § 554(c) abandonment and 2) "affect[ing] or prevent[ing] abandonment of estate property." *Id.* at 320; *DeVore v. Marshack* (*In re DeVore*), 223 B.R. 193, 198 (9th Cir. BAP 1998).

Courts have dealt with questions concerning the abandonment of property under § 554(c) in a wide variety of factual contexts, including: 1) unscheduled property, *see*, *In re Shultz*, 509 B.R. 190 (N.D. Ind. 2014)(holding that unscheduled general tax refund was not subject to abandonment under § 554(c)); 2) property with an uncertain or contingent value, *see*, *Vazquez v. Adair* (*In re Adair*), 253 B.R. 85 (9th Cir. BAP 2000)(holding that trustee could not revoke the § 554(c) abandonment of scheduled personal injury claim that described recovery as uncertain); and 3) property subject to a change in lien/exemption law. *See*, *In re Brinley*, 347 B.R. 613 (Bankr. W.D. Ky. 2006), *aff'd*, 2007 WL 2462631, 2007 U.S. Dist. LEXIS 63147 (W.D. Ky. Aug. 24, 2007), *aff'd sub nom. LPP Mortg. Ltd. v. Brinley*, 547 F.3d 643 (6th Cir. 2008) (holding revocation of § 554(c) abandonment appropriate in context of real property subject to change in lien avoidance law).

In this case, the issue before this court is somewhat unusual given that Debtors' claim of inheritance was properly scheduled by Debtors [Doc. #1, p. 13], and duly administered by the Trustee while the case was pending. [Doc. #43]. Thus, there is no question that both the Trustee and the Debtors properly fulfilled their obligations under the Bankruptcy Code insofar as the scheduling and disposition of the property at issue is concerned. In addition, the funds at issue only became available more than five years after Debtors' bankruptcy case had been closed. Further, the event that led to the disbursement of additional inheritance funds - the disgorgement of fees from the prior attorney for the probate estate of Geraldine Morris - was essentially unforeseeable by any party in interest.

After a review of the parties' briefs, the relevant case law, and the language of § 554(c) itself, the court finds that Debtors' claim of inheritance was abandoned when the Chapter 7 case

4

was closed on December 1, 2011 because the claim was properly scheduled by Debtors [Doc. #1, p. 13] and the Trustee fully administered the funds available while the case was pending.

The Trustee's Final Report, Form 1, has a column for listing "Assets Fully Administered (FA)/Gross Value of Remaining Assets". On the line for "distributions from mother's estate", the letters "FA" appear, signaling that the asset has been "Fully Administered". [Doc. #43, p. 6]. Thus, under § 554(c), what was at that time an essentially valueless remaining inheritance interest was abandoned from the Debtors' estate and became property of the Debtors upon the closing of their case.[2] *See*, *In re Wright*, 566 B.R. 457, 462 (6th Cir. BAP 2017)("The plain language of the statute unambiguously states that if an asset was properly scheduled and not administered by the trustee, upon closing the case, the asset is abandoned as a matter of law.").

While the Trustee argues that she could not abandon property that did not exist while the case was pending, this argument appears inconsistent with the nature of the property at issue. While the value of the inheritance changed - long after the case was closed - Debtors' interest in the estate of Geraldine Morris inarguably existed throughout Trustee's administration of Debtors' estate, and Trustee was given proper notice of its uncertain value via Debtors' schedules. [Doc. #1, p. 13]. Thus, the unforeseen second distribution does not change the fact that the underlying right to receive the inheritance was abandoned by operation of § 554(c), and is no longer property of the Chapter 7 estate.

## II. Revocation of Abandonment under § 554(c)

Under certain circumstances, the abandonment of property under § 554(c) can be revoked by the bankruptcy court. *See*, *Brinley*, 547 F.3d at 648-649. In *Brinley*, the Sixth Circuit Court of Appeals held that the proper method for determining when to revoke a § 554(c) abandonment is an application of Federal Rule of Civil Procedure 60(b), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9024. *Brinley*, 547 F.3d at 649. "The application of Fed. R. Civ. P. 60(b) strikes the appropriate balance between promoting finality and allowing courts to grant relief in limited circumstances." *Id*.

Fed. R. Civ. P. 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

---

2/ The reopening of the case does not change the fact that the property was abandoned by operation of law when the case was closed. *See*, *Olson v. Aegis Mortg. Corp.* (*In re Bloxsom*), 389 B.R. 52, 59-61 (Bankr. W.D. Mich. 2008).

5

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it was based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Thus, in order for a court in this circuit to revoke a § 554(c) abandonment of estate property, the party seeking the revocation must show grounds for a right to relief from judgment under one or more of Rule 60(b)'s six subsections. *Id.*; *see*, *In re Reiman*, 431 B.R. 901, 909 (Bankr. E.D. Mich. 2010).

Relevant here are subsections (1), (5), and (6) of Rule 60(b). The Trustee cannot prevail under Rule 60(b)(1) because Rule 60(c)(1) requires that a motion for relief from judgment under Rule 60(b)(1), which includes "surprise" as a basis for relief, must be filed within one year of the entry of judgment. *See*, *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393, 113 S.Ct. 1489, 1497, 123 L.Ed.2d 74 (1993). Accordingly, the court cannot grant relief under Rule 60(b)(1) because the Trustee moved to reopen the case more than five years after the entry of the Final Decree. [Doc. #45].

Unlike subsection (1), Rule 60(b)(5) and (6) do not have a rule-based one year time limit, though a motion seeking relief under subsections (5) and (6) must still be filed "within a reasonable time" and considerations of finality remain important to the court's analysis. *See*, Fed. R. Civ. P. 60(c)(1); *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 623 (6th Cir. 2008)("…relief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation."). A court's application of Rule 60(b)(5) "requires 'substantial change, unforeseenness, oppressive hardship, a clear showing' and 'caution' in its use." *Reiman*, 431 B.R. at 910 (quoting *Olle v. The Henry & Wright Corp.*, 910 F.2d 357, 364 (6th Cir. 1990)).

Relief under Rule 60(b)(6), on the other hand, should be granted "only in exceptional or

6

extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Rogan v. Countrywide Home Loans, Inc.* (*In re Brown*), 413 B.R. 700, 705 (6th Cir. BAP 2009)(quotation omitted); *see also*, *Pioneer*, 507 U.S. at 393, 113 S.Ct. at 1497. Those circumstances "'must include unusual and extreme situations where principles of equity mandate relief,' coupled with a showing that if relief is not granted extreme and undue hardship will result." *Brown*, 413 B.R. at 705 (quoting *Olle*, 910 F.2d at 365).

Courts asked to revoke an abandonment of property under § 554(c) have focused on events subsequent to case closure and the extent to which equity favors or disfavors revocation. *See, e.g.*, *Reiman*, 431 B.R. at 909-10; *In re Pioch*, 2010 WL 3701593 at **5-7, 2010 Bankr. LEXIS 2952 at **14-21 (Bankr. E.D. Mich. Sept. 1, 2010); *In re Langley*, 2011 WL 841170 at **3-4, 2011 Bankr. LEXIS 705 at **9-11 (Bankr. E.D. Mich. March 7, 2011). In *Reiman*, the trustee sought to revoke the § 554(c) abandonment of debtors' interest in real property subject to foreclosure that the trustee had initially deemed to be of inconsequential value, yet later discovered was likely worth more due to new information from a real estate broker knowledgeable in foreclosure sale bidding. 431 B.R. at 912. In ruling against the trustee's claim that extraordinary circumstances warranted revocation pursuant to Rule 60(b)(5) and (6), the court held that "[t]he trustee…may not reassert control over the property in light of subsequent events - for example, if it later becomes clear that a piece of property has a greater value than was previously believed." *Id.* (quoting *Kloian v. Kelley*, 115 Fed.Appx. 768, 769 (6th Cir. 2004)).

Similarly, the *Pioch* court was faced with a trustee's request for revocation of abandonment under § 554(c) in the context of real property subject to foreclosure. 2010 WL 3701593, 2010 Bankr. LEXIS 2952. The trustee argued that revocation was appropriate under Rule 60(b)(5) and (6) because the real property in question, after having been abandoned under § 554(c), had been sold at a sheriff's sale for significantly less than fair market value.[3] 2010 WL 3701593 at *1, 2010 Bankr. LEXIS 2952 at **2-3. In describing the uncertainty inherent to the value of real property subject to foreclosure, the *Pioch* court held that revocation was not appropriate and stated that:

> As a matter of equity and policy, the essentially uncontrolled and unpredictable possibility of reopening otherwise completed bankruptcy cases in such circumstances is at odds with (1) the policy of finality and certainty attendant to the closing of a bankruptcy case and the consequent ability of the debtor and all other interested parties to move on, and (2) an important policy of freedom to sell and

---

3/ The trustee in *Pioch* wanted to use the proceeds from a fair market sale to pay for the redemption of the property from the foreclosure sale. 2010 WL 3701593 at *1, 2010 Bankr. LEXIS 2952 at *3.

7

> otherwise dispose of property without the possibility of it becoming later involved in what the Trustee proposes here…. The administration of a bankruptcy estate, not unlike the disposition of a non-bankruptcy lawsuit or otherwise litigated controversy, is a finite process with a beginning and an end - this is importantly so if personal affairs and commercial affected relationships are to be able to move forward. The trustees do their duties and exercise their best judgment to complete the administration of the case as timely as possible, thus allowing the interested parties, debtors and creditors alike, to go forward with their lives.

*Pioch*, 2010 WL 3701593 at *6, 2010 Bankr. LEXIS 2952 at **17-18.

While the case before the court deals with a claim of inheritance, rather than real property subject to foreclosure, the court finds the reasoning in both *Reiman* and *Pioch* applicable to the facts in this case. Trustee contends that the unforeseen nature of the event that increased the value of Debtors' inheritance - the disgorgement of a probate attorney's fees - weighs in favor of administering the additional funds as property of the estate. [Doc. #59, p. 2]. However, as discussed by the *Pioch* court, unpredictability associated with the potential value of an asset does not warrant revocation of a § 554(c) abandonment given the importance of finality and certainty with respect to the conclusion of bankruptcy proceedings. 2010 WL 3701593 at *6, 2010 Bankr. LEXIS 2952 at **17-18. Rights and property routinely dealt with in Chapter 7 cases present trustees with difficult choices in terms of the asset's potential value versus the burden of administration. There is no question that the Trustee dutifully met her obligations under § 704 of the Bankruptcy Code in this case, but the fact that an unforseen right to an additional distribution arose long after their bankruptcy case was closed is not a sufficient reason for the court to revoke a § 554(c) abandonment, particularly given Rule 60(b)'s high bar and emphasis on the finality of judgments. *See*, *Ferro*, 511 F.3d at 623.

Aside from the unexpected nature of the event that led to the disbursement of additional inheritance proceeds, the only other factor that potentially leans towards pulling Debtors' inheritance interest back into the estate is the fact that the interest is now worth more than it was when the case was administratively closed. However, "a change in value is not cause for the case to be reopened to revoke abandonment." 5 Collier on Bankruptcy ¶ 554.02[7] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2015); *see*, *Reiman*, 431 B.R. at 912. Though Trustee's desire to make an additional distribution of funds to creditors is understandable, "[t]he fact that there may now be some additional value in" Debtors' interest in the inheritance does not warrant a Rule 60(b)(5) or (6) revocation of a § 554(c) abandonment. *Reiman*, 431 B.R. at 912; *see also*, *Pioch*,

2010 WL 3701593 at *5, 2010 Bankr. LEXIS 2952 at *15.

Additionally, the inheritance interest's increase in value is relatively small, weighing against revocation. In *Brinley*, the bankruptcy court deemed revocation of a § 554(c) abandonment of real property appropriate after a change in lien avoidance law would have granted the debtor $13,655.00 in additional equity while enriching a junior mortgage holder at the expense of other creditors and the debtor's estate. 347 B.R. at 619. In contrast to the situation in *Brinley*, the second distribution in this case amounts to only $2,112.76 [Doc. #59, p. 1], which is less than half of the $4,757.31 originally administered by Trustee while the case was pending. [Doc. #37, p. 6; Doc. #43, p. 3]. Though $2,112.76 is an amount that a Chapter 7 trustee would normally administer, allowing those funds to go to Debtors instead of the estate does not amount to an oppressive hardship. *See*, *Reiman*, 431 B.R. at 910; *Brown*, 413 B.R. at 705. Accordingly, the court finds that the claim of inheritance's increase in value, through an unforeseeable second distribution years after the closing of the bankruptcy, is not a sufficient basis for revocation of the § 554(c) abandonment that took place when the Debtors' bankruptcy case was closed in 2011.

### III. Conclusion

The unusual circumstances surrounding the second inheritance distribution, which could not have been anticipated, and the long period between the closing of the bankruptcy case and the probate disbursement, as well as the relatively small size of the second distribution, all strongly implicate considerations of finality. Accordingly, the court finds that revocation of abandonment is not warranted and that the Debtors are entitled to possession of the additional funds from the second inheritance distribution.

Accordingly, based upon the foregoing and for good cause shown,

**IT IS ORDERED** that Trustee Ericka Parker turnover the $2,112.76 inheritance disbursement to Debtors Michael Ray Morris and Cathy Marie Morris as soon as is practicable.

**IT IS FURTHER ORDERED** that Case Number 08-36702 be closed Fourteen (14) days after entry of this Order, or such later date that this Order becomes final and non-appealable.